UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DAVE WESSELDYK,**<br>    Plaintiff,<br><br>v.<br><br>**THE INTERNATIONAL MOTORSPORTS HALL OF FAME FOUNDATION *et al.*,**<br>    Defendants. | Case No. 1:24-cv-1308-CLM |

## MEMORANDUM OPINION

Dave Wesseldyk resides in Michigan. Wesseldyk paid the International Motorsports Hall of Fame Foundation ("IMHOF") $10,000 to buy a retired racing boat "as is" so that he could flip it for resale. Wesseldyk claims that the IMHOF and its former Executive Director, Mike Raita, did not tell him the boat was missing parts for four engines and two chain drives. So Wesseldyk sues the IMHOF and Raita for damages he claims exceed $75,000. (Doc. 1).

The IMHOF and Raita argue that claims stemming from a $10,000 "as is" purchase cannot place more than $75,000 in controversy. So they move the court to dismiss Wesseldyk's case because Wesseldyk fails to meet the threshold for diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 8). For the reasons explained below, the court **DENIES** their motion to dismiss.

## BACKGROUND

While Wesseldyk paid only $10,000 for the boat, Wesseldyk claims that Defendants held the boat out to be worth more than $1 million and his damages are (in part) the difference between what he thought he was buying versus what he actually received. So the court starts with the advertisement. Because Defendants raise a 'factual' attack on the court's jurisdiction, the court cites the complaint and the parties' attachments.

I.   **The 2022 Advertisement**

The boat in question is a 1983 "Gentry Turbo Eagle #9" that was donated to the IMHOF in 1998. Sometime in 2022, the IMHOF posted this advertisement on website that sells antique boats:

**MAKE OFFER**

Location: Talladega, AL

**BOAT SUMMARY**

Gentry Turbo Eagle #9 is a 1983 Cougar Cat customized by American Eagle Marine for offshore powerboat racing. Powered by 4 - 1250 HP inboard racing engines coupled to 2 Gentry custom built surface piercing chain drives. Vessel is constructed of mahogany frames, sheeted with mahogany plywood fastened with epoxy and bronze screws. Exterior is covered with fiberglass cloth saturated with epoxy resin. This boat won the World Championship in 1987 and established a new world speed record of 148.238 in the same year. The engines were rebuilt after it was retired from racing. The boat comes with an extra Gentry surface drive as well. This is a serious race boat with well documented history that we can provide upon request. The trailer alone was appraised at 100,000.00. It's an unbelievable package. We have more pictures upon request!

**BOAT DETAILS**

**Year:** 1983
**Length:** 50 Feet

**Manufacturer:** Gentry American Eagle Marine
**Beam:**

**ENGINE DETAILS**

**Year:** 1983
**Cylinders:** 4-8cylider twin turbos
**Max Speed:**

**Make:** 4-1250 HP
**Hours:** 0
**Fuel Type:**

**TRAILER DETAILS**

**Year:** 1983
**Axles:** 2
**Brakes:**

**Manufacturer:** Custom
**Capacity:** 60,000

(Doc. 16-1). The advertisement caught Wesseldyk's eye. Wesseldyk pleads that he is an experienced "rebuilder" of race boats and engines. (Doc. 1, ¶ 12). So Wesseldyk contacted Raita about buying the Gentry "for the purpose of restoring [the Gentry] for a profitable resale." (*Id.*).

Wesseldyk then traveled to Talladega to see the Gentry. Wesseldyk pleads that the Gentry "appeared from its surface to be the intact racing boat Defendant IMSHF represented in the advertisement." (Doc. 1, ¶ 8).

## II. The May 1998 Bill of Sale and Appraisal

After Wesseldyk's visit, Raita sent Wesseldyk the May 15, 1998 Bill of Sale that donated the Gentry to the IMHOF. The Bill of Sale describes the donated property like this:

```
WITNESSETH:  That the Donor is the owner of the following
described personal property, to-wit:

(A) GENTRY TURBO EAGLE #9, 50 FT. FOUR ENGINE, WOODEN RACE BOAT,
    FORMER WORLD RECORD HOLDER AT THE SPEED OF 148.238 MPH
(B) CUSTOM BUILT, DOUBLE-AXLE TRAILER, VIN CM0480010683
(C) GENTRY CHAIN DRIVE & PEDESTAL - SPECIALLY ENGINEERED FOR HIGH
    HORSEPOWER

said property being of special interest to members of the general
public; and
```

(Doc. 16-1, p. 17). The Bill of Sale valued (a) the boat at $1.1 million, (b) the trailer at $100,000, and (c) the chain drive and pedestal at $80,000.

Raita also sent Wesseldyk a 6-page appraisal that was done the week before the donation. (*Id.*, pp. 9-14). According to the appraisal, the Gentry was in "new condition" and "racing condition." (*Id.*, p. 10). The appraisal said that the Gentry was "powered by four (4) 1,250 HP Getry Turbo inboard gasoline engines coupled to two (2) Gentry custom-built surface piercing drive chains." (*Id.*). The appraisal said the engines were rebuilt in 1990, overhauled in 1991, and had "0 hours since rebuild, reported." (*Id.*, p. 12). The appraisal described the four engines' condition as "like new." (*Id.*). The appraisal also said the Gentry possessed mounted "Custom Gentry Chain Drives." (*Id.*, p. 14). The appraiser valued the Gentry's total market value at $1.1 million. (*Id.*).

### III. The Purchase

A month later, Wesseldyk agreed to purchase the Gentry "as is" for $10,000. Both sides signed the Bill of Sale. (Doc. 1-1).

Wesseldyk paid the $10,000, and IMHOF sent the Gentry to Wesseldyk in Michigan. Wesseldyk alleges that he dissembled the four engines and discovered that none had its internal parts. Wesseldyk further alleges that the two drives "lacked parts including chains and sprockets." (Doc. 1, ¶ 14).

### IV. The Lawsuit

Wesseldyk sued Raita and the IMHOF for fraud, breach of the implied and express warranties of merchantability and fitness for a particular purpose, breach of contract, and negligence or wantonness. Wesseldyk claims the court has diversity jurisdiction because (a) he is completely diverse from both Defendants and (b) his lawsuit seeks more than $75,000 in damages. As explained in the introduction, Defendants filed the present motion to dismiss, arguing that the court lacks subject matter jurisdiction because the parties' contract only amounted to $10,000, and Wesseldyk bought the boat "as is."

## STANDARD OF REVIEW

When a claim is challenged for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party bringing the claim bears the burden of establishing proper subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). And "[i]f the plaintiff fails to shoulder that burden, the case must be dismissed." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (citing *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008)).

## DISCUSSION

As explained, the only jurisdictional question is whether Wesseldyk has put more than $75,000 in controversy. Before the court answers that question, it makes three preliminary points:

- ***Defendants bear a heavy burden***: "Generally, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (internal quotation omitted); *see also Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997) ("It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.").

- ***Defendants mount a "factual attack"*** by attaching Raita's affidavit to their motion. (Doc. 8-1). This allows the court to look outside Wesseldyk's complaint and consider both parties' filings. *See Lawrence v. Dunbar*, 919 F.2d 1225, 1518–29 (11th Cir. 1990).

- ***Defendants cannot attack the merits of Wesseldyk's claims to disprove jurisdiction under Rule 12(b)(1)***. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925–28 (11th Cir. 2003). If Defendants' attack is deemed on the merits, the court must find that jurisdiction exists and judge the merits' argument at the appropriate time. *Id.*

These standards make the court's decision relatively straightforward.

1. *Amount in controversy*: The court needn't look further than the Gentry's four engines and two chain drives to find that Wesseldyk has placed more than $75,000 in controversy. Wesseldyk provides evidence that would allow a reasonable juror to find that, having read IMHOF's advertisement about "rebuilt engines" (doc. 16-1, p. 6) and the 1998

appraisal that said the engines had 0 hours of use after the rebuild (*id.*, p. 12), Wesseldyk reasonably believed the Gentry contained all parts needed to make the engines and chain drives work. Wesseldyk also provides two estimates that would allow a reasonable juror to find that it will cost more than $350,000 to buy and install the engine and chain drive parts that were missing when he received the Gentry:



(Doc. 16-1, p. 19). Defendants provide no evidence that would show these estimates are wrong or unreasonable. Because the replacement of missing parts alone would cost more than $75,000, Wesseldyk has placed more than $75,000 in controversy.

2. *"As-is"*: Defendants argue that, regardless of what condition Wesseldyk believed the Gentry's engines would be in, Wesseldyk cannot recover $75,000 because he bought the Gentry for $10,000 "as is," and "under Alabama law, only an 'express oral warranty' is capable of defeating as 'is as' disclaimer, and plaintiff's amended complaint alleged none because there is none." (Doc. 17, p. 3). Defendants are right; Alabama caselaw on boat sales says that an "as is" clause defeats implied warranties, but not express warranties. *Gable v. Boles*, 718 So. 2d 68, 71-72 (Ala. Civ. App. 1998).

But this is an attack on the merits, not the amount. And it requires a factfinder to determine whether Wesseldyk can prove that IMHOF or Raita represented that the Gentry had all necessary parts, thus negating Defendants' "as is" defense. *See id.* at 72 (the trial court did not err in

6

finding the buyer relied on the seller's representation that the boat was winterized, "notwithstanding their signing an 'as is' agreement").

Defendants can raise this merits-based attack in a Rule 12(b)(6) motion, a Rule 56 motion for summary judgment, or at trial. But this facial attack on the merits cannot serve as the basis for dismissing a case for lack of subject matter jurisdiction under Rule 12(b)(1)—*i.e.*, the relief Defendants seek here. *See Morrison, supra.*

## CONCLUSION

Wesseldyk sufficiently alleges that the parties are completely diverse and that his damages award could exceed $75,000. The court therefore **DENIES** Defendants' 12(b)(1) motion to dismiss, (doc. 8).

**DONE** and **ORDERED** on April 23, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE